

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JOHN KIHURIA, individually and on behalf of a class of similarly situated Washington residents,<br><br>Respondent,<br><br>v.<br><br>CONSUMER LEGAL SERVICES AMERICA, INC., a California corporation; IRA FRAZER, individually and on behalf of the marital community comprised of IRA FRAZER and JUDY FRAZER,<br><br>Appellants,<br><br>DEBT RELIEF CENTER, INC., a Maryland corporation; BOSEDE O. ORIADE and JOHN DOE ORIADE; and JOHN DOES 1-5,<br><br>Defendants. | No. 75459-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br>FILED: August 27, 2018 |

APPELWICK, C.J. — Consumer Legal Services of America Inc. argues that the trial court abused its discretion in granting the order for class certification and denying its motion posttrial to decertify the class. It argues that the class does not meet the numerosity, typicality, or commonality requirements. And, it argues that the class representative and counsel are inadequate representatives. Finally, it argues that the class is not ascertainable. We affirm.

## FACTS

John Kihuria, as representative, brought a class action suit against Consumer Legal Services of America Inc., Ira Frazer, and Judy Frazer (corporately "CLSA"). The class alleged that CLSA violated the Consumer Protection Act, chapter 19.86 RCW and violated the fee limitations set forth in the Washington debt adjusting act, chapter 18.28 RCW. The trial court granted the class's motion to certify the class. The order defined the certified class as,

> "All residents of Washington (and/or their estates) who entered into a contract with Consumer Legal Services America, Inc. ("CLSA") for forensic mitigation or debt settlement services." Except those who are barred by the statute of limitations.

The case was ultimately tried to a jury. A verdict was returned in favor of the class against CLSA. CLSA then moved to decertify the class. The court denied the motion. CLSA appeals.[1]

## DISCUSSION

CLSA argues that the trial court erred in certifying the class and denying its motion to decertify the class.[2]

---

[1] CLSA's motion to modify this court's ruling, denying the motion to amend the opening brief after the date on which the case was set, is an improper motion and is denied.

[2] CLSA also assigns error to the trial court's alleged failure "to give proper jury instructions" on the attorney exemption and good faith exemptions to the Washington debt adjusting act. But, CLSA does not argue either issue in its brief. Accordingly, the assignments of error are waived. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (holding that a party waives assignment of error when it does not support it with argument in its opening brief).

I. Standard of Review

The appellate court reviews class certification for abuse of discretion and will not disturb a trial court's certification decision if the record indicates the court properly considered all CR 23 criteria. Nelson v. Appleway Chevrolet, Inc., 160 Wn.2d 173, 188, 157 P.3d 847 (2007). A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds. Id. An appellate court resolves close cases in favor of allowing or maintaining the class. Id. at 188-89. Because CR 23 is identical to its federal counterpart, cases interpreting the analogous federal provision are highly persuasive. Schnall v. AT&T Wireless Servs., Inc., 171 Wn.2d 260, 271, 259 P.3d 129 (2011).

II. Class Certification

CLSA asserts that the trial court had no basis to certify a class. Specifically, CLSA argues that the class does not satisfy the numerosity, typicality, and commonality requirements. It contends the class representative and his counsel are incapable of adequately representing the class. And, CLSA argues that the class is not ascertainable because it is defined with reference to ultimate issues.

In order to certify a class action under CR 23, a trial court must find numerosity, commonality, typicality, and adequacy of representation. CR 23(a); Schnall, 171 Wn.2d at 282.

A. Numerosity

A class should only be certified where a plaintiff demonstrates that the proposed class "is so numerous that joinder of all members is impracticable." CR 23(a)(1). Although plaintiffs seeking to certify a class need not show that it would

be impossible to join all of the members of the proposed class, they must show that it would be "'extremely difficult or inconvenient.'" Miller v. Farmer Bros. Co., 115 Wn. App. 815, 821, 64 P.3d 49, (2003) (quoting Hum v. Dericks, 162 F.R.D. 628, 634 (D. Haw. 1995). Generally, there is a rebuttable presumption that joinder is impracticable where a class contains at least 40 members, while other sources have stated that between 25 to 30 members raises a presumption of impracticability of joinder. Id. But, there is no presumption that classes under a certain size should not be certified. Id. at 822. A trial court determines whether or not a class is large enough to maintain an action under CR 23(a) in light of the particular circumstances of the case, and generally, the trial court's decision on this issue is final. Id.

CLSA argues that, because many members of the purported class must be eliminated, the class has less than 40 members, and thus fails the numerosity requirement. Pretrial, the parties stipulated to a class of 67 members.[3]

CLSA asserts that one of the class members has died, and must be removed from the class. But, under Washington probate and trust law, an estate's personal representative shall "collect all debts due the deceased and . . . shall be authorized . . . to maintain and prosecute such actions as pertain to the

---

[3] CLSA claims in its brief that the class started out with 70 members and that the parties stipulated to remove 12 members whose claims were barred by the statute of limitations, leaving 58 members. But, the record supports Kihuria's assertion that the parties stipulated to 67 class members. CLSA's number of 70 members comes from Kihuria's initial estimate, which identified 70 potential members. But, after Kihuria reviewed records from CLSA and Global Client Solutions, it amended the class number to 79, before stipulating to remove 12 members.

management and settlement of the estate, and may institute suit to collect any debts due the estate or to recover any property, real or personal, or for trespass of any kind or character." RCW 11.48.010. More substantially, CLSA argues that, because 29 of the identified class members have filed for bankruptcy and did not list claims against CLSA in doing so, they are not eligible to be members of this class action. CLSA made this same argument below, both in opposition to the class's motion for certification and when it moved to decertify the class.

In its ruling certifying the class, the trial court stated,

> According to the case law, the class must be big enough that joinder of these different cases would be extremely difficult or inconvenient. According to the case law, there is no set number. There's not 10. There's not 20. There's not 40, although one case submitted by Plaintiff did indicate that 40 was presumptively enough.
>
> Even with the 25 people that Defense would suggest, these are 25 people which under the allegations are heavily indebted and that's why they went to the company, to seek some help, stressed out over debt, various communities, and so forth, I think that, whether it's 25 or whether it's 70, the number is -- the numerosity criterion is met. In addition, we are to look at factors of geography, the size of the claim, and so forth. I am concluding that, based on the representation that two people from two different counties did contact the Plaintiff's counsel, that it would make sense for these cases to be tried under this numerosity criterion, anyway, together.
>
> So first one, I think, is met, bankruptcy not a bar, but even if you calculate or subtract those, you still have at least 25 people.

And, in its order denying CLSA's motion to decertify the class, the court stated,

> [Kihuria] correctly points out that the definition of class member includes the bankruptcy estates of individuals who have filed for bankruptcy protection. Whether the trustees exercise any right to receive payment they may have or whatever use is made of the money will await the claims adjudication process.

The class certified by the trial court included successor estates. After a bankruptcy filing, the trustee steps into the consumer's role. See Miller v. Campbell, 164 Wn.2d 529, 537, 192 P.3d 352 (2008) (Recognizing a bankruptcy trustee as the real party in interest of a debtor's claim that was not disclosed in bankruptcy.). The trial court approved and counsel sent notice to all class members, including all known bankruptcy trustees.

Even if the 29 members who filed for bankruptcy were removed from the class, and the court eliminated the class member who has allegedly died, there would still be 37 members.

The court's analysis mirrors case law. See Miller, 115 Wn. App. at 822 ("[T]here is . . . no converse presumption that classes under a certain size should not be certified."). And, in certifying the class, the trial court included "'[a]ll residents of Washington (and/or their estates)'" who contracted with CLSA for forensic mitigation or debt settlement services. CLSA's argument to exclude individuals who filed for bankruptcy or who are deceased fails. The trial court did not abuse its discretion in determining that the class met the numerosity requirement.

B. Typicality

CLSA next argues that the class representative, Kihuria, cannot satisfy the typicality requirement. It argues that the class members have different financial situations, bankruptcy statuses, and "great variations" in the types of services they received. Then, CLSA argues that Kihuria's claim was not typical, because Kihuria was not charged fees that exceeded 15 percent of his total enrolled debt, as the

class alleged in its complaint. And, CLSA asserts that Kihuria misrepresented himself to CLSA, and therefore does not credibly share all of the class's claims.

A plaintiff's claim is typical if it "'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" Pellino v. Brink's Inc., 164 Wn. App. 668, 684, 267 P.3d 383 (2011) (quoting Smith v. Behr Process Corp., 113 Wn. App. 306, 320, 54 P.3d 665 (2002)). Where the same unlawful conduct is alleged to have affected both the named plaintiffs and the class members, varying fact patterns in the individual claims will not defeat the typicality requirement. Smith, 113 Wn. App. at 320.

Here, the typicality of Kihuria's claim was established in a pretrial order that stated,

> Pursuant to the stipulation of counsel for CLSA, it is hereby conclusively established that Class Members enrolled in CLSA's debt settlement/forensic mitigation program by signing a contract substantially similar to the "Contract for Services and Engagement Agreement" used to enroll Plaintiff John Kihuria, containing equivalent fee provisions.

And, in granting Kihuria's motion to certify the class, the trial court found,

> The named Plaintiff and proposed Class Representative, John Kihuria, is a Washington resident who participated in and paid fees pursuant to Defendants' debt settlement program. The Named Plaintiff's claim is typical of the claims of all other Class Members. It presents the same core common questions of fact and law underlying every Class Members' claim. The named Plaintiff's claim, therefore, is typical of the claims of other Class Members, satisfying the requirements of CR 23(a)(3).

CLSA asserts that Kihuria was not charged fees in excess of 15 percent in violation of RCW 18.28.080.[4] CLSA cites to Kihuria's testimony during cross-examination when he agreed that the legal fees for which he contracted to pay CLSA was less than 15 percent. But, Kihuria also testified that for the last 18 months of his contract he was charged a $35 monthly fee, on top of the legal fees. The additional $630 in service fees brought the total fees to more than 15 percent of the total enrolled debt amount stated in the contract.[5] Kihuria's contract exceeds the statutory limit on fees, as alleged in the complaint.

The typicality requirement looks to whether claims of the class representatives are typical of those of the class. It is satisfied when each class member's claims arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability. Brown v. Consumer Law Assocs., LLC, 283 F.R.D. 602, 613 (E.D. Wash. 2012). Here, Kihuria and the other class members signed contracts substantially similar to one another and Kihuria's claim was typical of the claims of the class.

In attacking Kihuria's credibility, CLSA claims that Kihuria misrepresented his employment status to CLSA and failed to disclose that a member of his household contributed to the family income. CLSA argues that Kihuria is not an

---

[4] RCW 18.28.080(1) provides in part, "The total fee for debt adjusting services, including, but not limited to, any fee charged by a financial institution or a third-party account administrator, may not exceed fifteen percent of the total debt listed by the debtor on the contract."

[5] The legal fees listed on Kihuria's contract ($8,281.05) plus the $630 service fees charged equals $8,911.05. This is 16.14 percent of the total enrolled debt amount, $55, 207.

appropriate representative because he does not credibly share all claims in the litigation.

CLSA cites Kline v. Wolf, 702 F.2d 400, 402-03 (2d Cir. 1983). In Kline, two named plaintiffs alleged in a class action suit that the defendants had issued false and misleading statements about Allied Artists Industries Inc.'s financial condition to the investing public. Id. at 401. One of the named plaintiffs testified in his deposition that he relied on a report which did not exist at the time he allegedly relied on it. Id. at 403. The other named plaintiff's testimony was also in serious doubt, and she refused to answer critical and relevant questions at her deposition. Id. at 401. The court held,

> Since plaintiffs' testimony on an issue critical to one of their two causes of action was subject to sharp attack, the district court reasonably concluded that their credibility in general was sufficiently in doubt to justify denying them a fiduciary role as class representatives with respect to both claims.

Id. at 403.

This case is distinguishable from Kline. Here, the class alleged that CLSA violated the fee limitations set forth in RCW 18.28.080. The class based its claims on the members' individual contracts with CLSA, and Kihuria's contract was typical of those of the other class members. Whether Kihuria contradicted himself in testimony did not affect the contract he had with CLSA. Further, the procedural posture of this case differs from that in Kline. In Kline, the court found that the credibility of the named plaintiffs' was subject to sharp attack, making them unsuitable as class representatives, and affirmed the denial of the motion of class certification. Id. Here, the class was certified and the suit proceeded to trial. At

9

trial, CLSA had the opportunity to attack Kihuria's credibility, and the jury returned a verdict for the class against CLSA.

The trial court properly concluded that Kihuria's claims were typical in light of the class's complaint.

C. Commonality

CLSA next argues that "common questions of law and fact do not predominate in this case." And, CLSA contends that individual issues predominate and a class action is not the superior method of adjudication.

There is a low threshold to meet the commonality requirement of CR 23(a). Smith, 113 Wn. App. at 320. To satisfy the commonality test there need be only a single issue common to all members of the class. Id. And, CR 23(b)(3) requires that common legal and factual issues predominate over any individual issues. Our Supreme Court has held that the possibility that individual issues may predominate once the general illegality of the questioned practice is determined does not preclude a class action. Johnson v. Moore, 80 Wn.2d 531, 535, 496 P.2d 334 (1972).

Here, in certifying the class, the trial court found, "this action presents a small set of factual and legal issues common to all Class Members." One of the issues common to all class members was whether the defendants engaged in "debt adjusting" within the meaning of Washington's debt adjusting statute. This is sufficient to satisfy the CR 23(a) commonality requirement. CLSA argues that individual inquiries are necessary to determine whether each class member was charged fees in violation of the debt adjusting act. But, this does not defeat the

10

overarching common legal issue of CLSA's liability. The trial court correctly pointed out that this type of case, "where you have a number of people, each one of whom is alleging injury or damages, which in the scheme of things is relatively modest . . . it doesn't make sense to have 40 lawsuits." See Miller, 115 Wn. App. at 828 ("[W]here individual claims of class members are small, a class action will usually be deemed superior to other forms of adjudication.").

The trial court did not abuse its discretion in finding that the class met the commonality requirement, and that the issues common to the class predominated over individual issues.

D. Adequacy of Representation

CLSA contends that neither Kihuria nor counsel for the class can satisfy the adequacy test of CR 23. CLSA argues that counsel for the class, the Scott Law Group, is not adequate because it combined debtors with a potential right to recover with those who have filed for bankruptcy, creating a conflict among class members. And, it argues that Kihuria is not an adequate representative, because he contradicted his deposition testimony.

Both CR 23 and its federal counterpart require that the representative parties fairly and adequately protect the interests of the class. CR 23(a)(4); Fed. R. Civ. P. Rule 23(a)(4). To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

11

In its motion opposing certification, CLSA argued that counsel "may have a conflict" if the class included members who had filed for bankruptcy. In its motion to decertify, CLSA argued that the Scott Law Group was inadequate, because it created such a conflict in the class. And, it argued that Kihuria threw away documents and contradicted his deposition testimony.

In certifying the class, the trial court found counsel and Kihuria adequate representatives. In denying the motion to decertify, the court concluded that the analysis and result had not changed since the order granting the class certification.

CLSA does not prove conflicts of interest between counsel or the named plaintiff and the other class members. It is not a conflict of interest that some of the class members have filed for bankruptcy because, as mentioned above, the bankruptcy trustee can step into the role of the consumer after the outcome of the class action. CLSA's argument that Kihuria was not credible and therefore could not represent the class is the same argument it raised in his typicality challenge. As we concluded above, whether Kihuria contradicted himself did not affect his ability to represent the class. The trial proceedings did not provide a basis to reverse this result.

The trial court did not abuse its discretion in finding Kihuria and counsel adequate representatives.

E. Ascertainability

Finally, CLSA argues that the class is not ascertainable, because it is defined with reference to ultimate issues, not objective facts. CLSA asserts that

the class definition here rests on whether it violated the debt adjusting act, a contested legal conclusion.

A prerequisite to a Rule 23 action is the actual existence of a "class." Sanneman v. Chrysler Corp., 191 F.R.D. 441, 445 (E.D. Pa. 2000). The class must be sufficiently identifiable without being overly broad. Id. The class should not be defined by criteria that are subjective or that require an analysis of the merits of the case. Intratex Gas Co. v. Beeson, 22 S.W.3d 398, 403-04 (Tex. 2000).

In its order granting the motion to certify the class, the trial court defined the class as, "'All residents of Washington (and/or their estates) who entered into a contract with Consumer Legal Services, Inc. ("CLSA") for forensic mitigation or debt settlement services. Except those who are barred by the Statute of Limitations.'" The class definition does not depend on, nor does it even mention, whether CLSA violated the debt adjusting act. The determination that the class is ascertainable and does not rely on the merits of the case was not error.

All of the necessary elements were present when the class was certified. They remained present when the motion to decertify was present. The trial court did not err in certifying the class and in denying the motion to decertify the class.

III. Attorney Fees

Citing RCW 19.86.090, the class requests that the panel award attorney fees on appeal.

This court awards attorney fees to the prevailing party on the basis of a private agreement, a statute, or a recognized ground of equity. Buck Mountain Owner's Ass'n v. Prestwich, 174 Wn. App. 702, 731, 308 P.3d 644 (2013). Under

13

RCW 19.86.090, a party who prevails under the Consumer Protection Act may recover reasonable attorney fees.

The class has prevailed on appeal and we award attorney fees under RAP 18.1.

We affirm.

_Appelwick, C.J._

WE CONCUR:

_Becker, J._